GOACHEE v CITY OF GARDEN CITY

MUNICIPAL CORPORATIONS—URBAN RENEWAL—STATUTES—CITIZENS'
DISTRICT COUNCIL—REPRESENTATION.

Failure of defendant city to ensure that residents of a proposed
urban renewal project area received representation on a citizens' district council for the district area to the maximum
extent possible violated the statutory language and violated the
tenets of fair representation to the people most affected by an
urban renewal project where not one resident of the project
area, much less a majority, was selected to be a member of the
district council.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 March 3, 1973, at Detroit.
(Docket No. 13679.) Decided March 28, 1973.

Complaint by Mary Goachee and Leonard
Thompson against the City of Garden City challenging the constitutionality of an ordinance approving an urban renewal plan and for injunctive
relief. Defendant's motion to dismiss granted.
Plaintiffs appeal. Reversed and remanded.

*D'Avanzo & Danko,* for plaintiffs.

*Berry, Hopson, Francis & Mack,* for defendant.

Before: FITZGERALD, P. J., and V. J. BRENNAN
and O'HARA,* JJ.

REFERENCE FOR POINTS IN HEADNOTE
40 Am Jur 2d, Housing Laws and Urban Redevelopment §§ 2, 9–14,
20.
* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

FITZGERALD, P. J. On September 16, 1968, the City of Garden City passed an ordinance designating an area as the proposed site of an urban renewal project. The same day the city passed another ordinance providing for the appointment of a 15-member citizens' district council by the Mayor subject to the approval of the city council, the majority of whom were to be residents of the development area. Both ordinances were enacted by the city pursuant to the enabling provisions of 1945 PA 344, as amended.

On June 17, 1971, plaintiffs commenced suit in Wayne County Circuit Court against defendant Garden City seeking to have Garden City Ordinance 71-008, which approved the urban renewal plan, held unconstitutional and void for failure to comply with the enabling statute and for an injunction enjoining defendant from attempting to implement the project. The case was tried without a jury. At the close of the plaintiffs' proofs, defendant city made a motion for dismissal which was granted by the trial court. A motion for a new trial was made and denied. Plaintiffs are appealing from this adverse judgment.

The plaintiffs are owners and occupiers of residential premises located in the urban renewal project area. Approximately one-third of the area is vacant land. The remainder of the area contains 8 homes and 28 businesses. It was stipulated at trial by all parties that none of the members of the citizens' district council resided in the project area, although some did own property or conduct a business there.

One of the four issues raised by plaintiffs is dispositive of the case. It is contended that the composition of the citizens' district council was not representative of those people residing in the pro-

posed site of the urban renewal project as required by statute. We agree.

1945 PA 344, the applicable enabling statute, was amended three times during the course of defendant Garden City's planning of the urban renewal project.

1968 PA 189[1] provided in pertinent part:

"For each district area, a citizens' district council of not less than 10 nor more than 25 members *shall be selected in a manner that ensures that the citizens' district council is to the maximum extent possible representative of the residents of the area and of other persons with a demonstrable and substantial interest in the area. The majority of the citizens' district council shall be composed of citizens living in the development area.*"(Emphasis supplied.)

The above mentioned provision was amended by 1969 PA 173[2] to read:

"For each district area, a citizens' district council of not less than 12 nor more than 25 members shall be selected in a manner that *ensures that the citizens' district council is to the maximum extent possible representative of the residents of the area and of other persons with a demonstrable and substantial interest in the area. The majority of the citizens' district council shall be composed of citizens living in the development area.*"(Emphasis supplied.)

Finally, 1969 PA 336[3] states in part:

"Where the number of business establishments in the project area exceeds the number of occupied dwelling units in the area, the majority of the citizens' district council need not be composed of citizens living in the development area."

---

[1] MCLA 125.74; MSA 5.3504.

[2] MCLA 125.74; MSA 5.3504.

[3] MCLA 125.84; MSA 5.3513(14).

Failure of defendant city to ensure that residents of the proposed urban renewal project received representation to the maximum extent possible clearly violated the statutory provisions of 1968 PA 189 and 1969 PA 173. Not one resident of the project area, much less a majority, was selected to be a member of the citizens' district council.

Though the final amendment, 1969 PA 336, eliminates the requirement that a majority of citizens on the district council be residents of occupied dwelling units of the area, we cannot presume this to mean that these people are not entitled to some representation. The absence of *any* residents of the area runs counter to the statutory language and violates the tenets of fair representation to people most affected by the urban renewal project. We interpret 1969 PA 336 to mean that residents of occupied dwellings of this area are entitled to some representation on the citizens' district council.

The trial court erred in granting defendant's motion for dismissal. The judgment is reversed and the matter remanded. Costs to appellant.

All concurred.